The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 13, 2014, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: January 13, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: ) | Case No. 12-11072 |
| ) | |
| LINDA M. CRESPO, ) | |
|     Debtor. ) | Chapter 7 Proceedings |
| _____ ) | |
| ) | |
| DANIEL M. McDERMOTT, ) | Adversary Proceeding |
| UNITED STATES TRUSTEE, ) | No. 13-1088 |
|     Plaintiff, ) | |
| ) | |
| v. ) | Judge Arthur I. Harris |
| ) | |
| LINDA M. CRESPO, ) | |
|     Defendant. ) | |

MEMORANDUM OF OPINION[1]

This adversary proceeding is currently before the Court on the U.S. Trustee's unopposed motion for summary judgment against the defendant-debtor Linda M. Crespo. (Docket No. 15.) The U.S. Trustee seeks revocation of

---

[1] This opinion is not intended for official publication.

the debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(d)(1) and (e)(1). For the following reasons, the Court grants the U.S. Trustee's motion for summary judgment.

## JURISDICTION

The Court has jurisdiction over this action. An action seeking revocation of a bankruptcy discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J), which falls within the jurisdiction granted to this Court pursuant to Local General Order No. 2012-7, dated April 4, 2012.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Linda M. Crespo (the "debtor") filed a Chapter 7 voluntary petition for bankruptcy relief on February 17, 2012. (Case No. 12-11072, Docket No. 1.) The debtor purportedly disclosed all of her personal property on Schedule B. (Case No. 12-11072, Docket No. 1, at 10-12.)

About one month later, on March 19, 2012, the debtor appeared in person before Chapter 7 trustee Lauren A. Helbling for the section 341 meeting of creditors. (Case No. 12-11072, Docket No. 8.) The Chapter 7 trustee asked the debtor questions about the authenticity and accuracy of her bankruptcy schedules and statements. (Docket No. 14, Exhibit A, at 2:11-3:5.) The debtor identified the

2

signature authorizing the bankruptcy filing as her own, and she testified that she looked at all of the pages of her bankruptcy filing before she signed the signature page. (*Id.* at 2:17-24.) The Chapter 7 trustee asked the debtor, "Are all your assets, all your liabilities, and all your income listed?" (*Id.* at 2:25-3:1.) The debtor responded, "Yes." (*Id.* at 3:2.)

Later in the examination, the Chapter 7 trustee asked the debtor, "Have you repaid any debt to family members over the past year in the amount of a thousand dollars or more?" (*Id.* at 5:18-20.) The debtor responded, "Yes . . . . My mother and my neighbor." (*Id.* at 5:21-23.) The debtor further testified that she received approximately $7,600 of lawsuit settlement proceeds for the benefit of her minor child and that she deposited the settlement proceeds in a custodial account. The debtor said she withdrew $7,000 of her minor child's settlement proceeds to pay her own debts to her mother and neighbor. (*Id.* at 6:10-10:18.) The debtor said she paid her mother $2,500 and her neighbor $4,500. (*Id.* at 5:18-6:24.)

The Chapter 7 trustee requested copies of the settlement documentation and settlement check to verify that the debtor's minor child was the proper payee. (Docket No. 14, Exhibit B, at 1.) Upon receipt of the settlement documentation, the Chapter 7 trustee determined that the bankruptcy estate had an interest in the settlement proceeds. (*Id.*) Accordingly, the Chapter 7 trustee filed adversary

3

proceedings seeking avoidance and recovery of the debtor's alleged preferential transfers to the debtor's mother and neighbor. (Adv. Nos. 12-1384 and 13-1019.) The debtor's mother and neighbor both denied that they received any money from the debtor. (Docket No. 14, Exhibit B, at 2.)

On January 29, 2013, the debtor's former counsel spoke with the Chapter 7 trustee and indicated that the debtor intended to submit a written statement recanting her testimony during the meeting of creditors. (*Id.*) Through counsel, the debtor told the Chapter 7 trustee that she never paid any of the settlement proceeds to her mother or neighbor. (*Id.*) The next day, the Chapter 7 trustee voluntarily dismissed the adversary proceedings against the debtor's mother and neighbor. (*Id.*)

On February 4, 2013, the Chapter 7 trustee filed a motion for turnover of property. (Case No. 12-11072, Docket No. 34.) On February 10, 2013, the debtor, acting on her own behalf, submitted correspondence to the Chapter 7 trustee and the Court. ((Docket No. 14, Exhibit B, at 2, 4; *see* Case No. 12-11072, Docket No. 36.) The correspondence began, "I would like to take this opportunity to explain why I perjured myself at my bankrupcy hearing." (Docket No. 14, Exhibit B, at 4.) The debtor explained that she, her minor child, and her sister-in-law were beneficiaries of her late father-in-law's estate. (*Id.*) According to the

4

debtor, the attorney who handled her father-in-law's estate failed to "withhold enough money for taxes before he distributed checks to the beneficiaries." (*Id.*) The debtor stated that, as a result, she and her minor child incurred substantial legal fees and IRS penalties. (*Id.* at 4-5.) The debtor explained that the settlement proceeds represented the amount she was able to recover for her minor child from the attorney who mismanaged her father-in-law's estate. (*Id.* at 4.) The Chapter 7 trustee forwarded the debtor's correspondence and other documentation to the U.S. Trustee. (Docket No. 14, Exhibit B, at 2.) The Court declined to docket the debtor's correspondence because the debtor was represented by counsel, the correspondence contained unnecessary or irrelevant information, and the correspondence included personal identifiers. (Case No. 12-11072, Docket No. 36.)

On February 13, 2013, the Court entered an Order granting debtor's counsel leave to file an amended response to the motion for turnover. (*Id.*) Debtor's counsel never filed an amended response. On February 19, 2013, debtor's counsel moved to withdraw. (Case No. 12-11072, Docket No. 37.) The debtor appeared in person, without her attorney, at a hearing on the motion for turnover on March 5, 2013. The Court indicated that the Chapter 7 trustee's motion for turnover would be granted and, unless the debtor filed a response or appeared at

5

the next docket, the Court would grant the motion by debtor's counsel to withdraw. On March 20, 2013, the Court granted the motion by debtor's counsel to withdraw. (Case No. 12-11072, Docket No. 40.)

On April 11, 2013, the U.S. Trustee filed a complaint to revoke the debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(d)(1) and (e)(1). (Docket No. 1.) The U.S. Trustee states that the debtor committed fraud and that the U.S. Trustee did not know of the debtor's fraud until after the debtor received a Chapter 7 discharge. (*Id.* at 5-6.) The U.S. Trustee alleges that the debtor knowingly and fraudulently concealed her interest in $4,500 of settlement proceeds she had on hand at the time she filed her bankruptcy petition. (*Id.*) The U.S. Trustee also alleges that the debtor knowingly and fraudulently made false oaths or accounts when she omitted $4,500 from her Schedule B and testified at her section 341 meeting of creditors that she used the settlement proceeds to repay her mother and neighbor. (*Id.*) The debtor filed an answer denying that she fraudulently concealed property or knowingly and fraudulently made false oaths or accounts. (*See* Docket No. 5, at 1-6.)

On August 16, 2013, the debtor appeared for a deposition conducted by the U.S. Trustee. (Dep. Tr. at 1.) The debtor testified that prior to filing for bankruptcy she "reviewed and signed her bankruptcy petition, schedules and

6

Statement of Financial Affairs." (*Id.* at 20:16-20.) The U.S. Trustee asked the debtor about two withdrawals of settlement proceeds the debtor made in the two weeks before she filed for bankruptcy, $2,500 on February 3, 2012, and $2,000 on February 13, 2012. (*Id.* at 16:15-17:14.) The debtor stated that she did not have any documentation identifying how the funds were spent. (*Id.*) The debtor said she "recall[ed] attending and testifying under oath at the [section] 341 meeting of creditors . . . ," but when the U.S. Trustee asked the debtor if she "testified under oath that she reviewed and signed [her] bankruptcy petition and schedules and such documents are accurate," the debtor invoked her Fifth Amendment privilege against self-incrimination. (*Id.* at 22:17-21, 20:21-21:5.)

      The debtor testified that on December 19, 2011, she deposited a $7,666.68 settlement check into a custodial account she held for the benefit of her minor child. (*Id.* at 13:15-14:18, 24:13-23.) The debtor stated that to the best of her knowledge, the "settlement check was issued to her individually as well as to [her minor child] . . . ." (*Id.* at 24:24-25:2.) The debtor said that she withdrew $2,000 from the account on December 21, 2011, to purchase Christmas presents for her minor child. (*Id.* at 25:7-21.) The debtor acknowledged that she made two additional cash withdrawals, totaling $4,500, in the two weeks before she filed bankruptcy. (*Id.* at 26:8-28:5.) The debtor stated that she could not remember

7

what she used the money for but she assumed it was for bills. (*Id.*) The debtor also stated she could not remember if she used the money immediately. (*Id.* at 28:4-5.) When the U.S. Trustee inquired about the amount of cash the debtor had in her possession on the date she filed her bankruptcy petition, the debtor invoked her Fifth Amendment privilege against self-incrimination. (*Id.* at 28:6-10.)

The debtor also invoked her Fifth Amendment privilege against self-incrimination when the U.S. Trustee inquired about (1) the debtor's testimony at the meeting of creditors that she used a total of $7,000 to repay debts to her mother and neighbor; (2) the debtor's two withdrawals of settlement proceeds in the two weeks before she filed bankruptcy, which totaled $4,500; (3) the debtor's February 10, 2013, correspondence that stated she perjured herself at the meeting of creditors; (4) whether the debtor owed her mother or neighbor any money on the date she filed her bankruptcy petition; and (5) the debtor's understanding about what assets the Chapter 7 trustee might try to collect.

On September 16, 2013, the U.S. Trustee moved for summary judgment. (Docket No. 14.) The debtor has failed to file a response.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court

8

"shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570. "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012) (citation and internal quotation marks omitted).

## DISCUSSION

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105 (2007) (citations and internal quotation marks omitted). Accordingly, "[t]he Bankruptcy Code should be construed liberally in

9

favor of the debtor." *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000) (citation omitted).

In this case, the U.S. Trustee seeks revocation of the debtor's discharge pursuant to 11 U.S.C. § 727(d)(1) and (e)(1).  11 U.S.C. § 727(d) provides, in pertinent part:

> (d)  On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
>> (1)  such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]

11 U.S.C. § 727(d)(1).

11 U.S.C. § 727(e)(1) provides a one-year time limit from the date the discharge was granted for requests to revoke a discharge pursuant to 11 U.S.C. § 727(d)(1).  The U.S. Trustee's complaint to revoke the debtor's discharge is timely.  The debtor received a Chapter 7 discharge on May 25, 2012. (Case No. 12-11072, Docket No. 23.)  The U.S. Trustee filed this adversary proceeding on April 11, 2013, less than one year after the debtor received a discharge.  (Docket No. 1.)

"[A] party bringing an action to revoke a debtor's discharge under [§ 727(d)(1)] must establish the existence of two elements: (1) the debtor obtained

[a] discharge by fraud; and (2) [the] moving party did not know of the fraud before the discharge." *Yoppolo v. Sayre* (*In re Sayre*), 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004). The second element is clearly satisfied. The undisputed facts reveal that the U.S. Trustee was not informed of the facts or circumstances allegedly constituting fraud before the Court granted the debtor's Chapter 7 discharge in May 2012. The U.S. Trustee learned about the alleged fraud when the Chapter 7 trustee referred the matter to the U.S. Trustee on or about February 27, 2013. The first element merits a detailed discussion.

A debtor obtains a discharge by fraud when "[the debtor's] fraud, had it been known at the time of the discharge, would have been grounds for denying the discharge." *Jones v. U.S. Trustee, Eugene*, 736 F.3d 897, 900 (9th Cir. 2013) (citing *In re Nielsen*, 383 F.3d 922, 925 (9th Cir. 2004); *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). *See also Yoppolo*, 321 B.R. at 427 ("§ 727(d)(1) contemplates the type of fraud that, had the circumstances been timely known, would have prevented the debtor from receiving a discharge in the first place.") (citation omitted). The U.S. Trustee argues that the debtor's discharge would not have been granted had the debtor's alleged false oaths and fraudulent concealment been timely discovered.

The Court first considers whether there is a genuine dispute at to any

11

material fact that, had all the facts and circumstances been known, the debtor's discharge would have been denied for making a false oath or account. A section 727(a)(4)(A) denial of discharge for making a false oath or account requires proof that "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *Keeney*, 227 F.3d at 685 (citation omitted).

There is no genuine dispute as to any material fact. The debtor appeared for examination by the Chapter 7 trustee on March 19, 2012. The debtor testified under oath that she used $7,000 of lawsuit settlement proceeds to repay debts to her mother and neighbor. The debtor's testimony was false. The debtor knew the statement was false because she admitted that she did not use $7,000 of settlement proceeds to repay her mother and neighbor. Rather, she withdrew about $2,000 of the settlement proceeds to purchase Christmas gifts for her minor child and withdrew an additional $4,500, which she either had on hand at the time she filed her bankruptcy petition or used to pay bills.

The debtor's testimony related materially to the bankruptcy case because the debtor's testimony concerned the location of potential assets for administration. *Keeney*, 227 F.3d at 686 ("The subject of a false oath is material if it bears a

relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.") (citation and internal quotation marks omitted). Furthermore, the debtor's false testimony materially impacted the administration of the bankruptcy estate. The Chapter 7 trustee filed two adversary proceedings seeking to recover preferential transfers in reliance on the debtor's false testimony. The Chapter 7 trustee voluntarily dismissed those adversary proceedings when the debtor indicated she would recant her testimony from the meeting of creditors.

The only remaining question is whether the debtor had fraudulent intent when she made a false statement about repaying debts to her mother and neighbor. "[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case." *Id.* (citation and internal quotation marks omitted). The aforementioned facts and circumstances support an inference of fraudulent intent. In addition, the Court has direct evidence of the debtor's fraudulent intent. The debtor's correspondence from February 10, 2013, states, in pertinent part:

> I would like to take this opportunity to explain why I perjured myself at my bankruptcy hearing.
> . . . .
> I am truly sorry I lied about the settlement money for my [minor child]. I fought so hard to get my [minor child] that money, that I just couldn't allow someone else to come along and take it away, again.

13

(Docket No. 14, Exhibit B, at 4-6.)  The debtor's letter sheds light on her motive to deceive the Chapter 7 trustee about the disposition of the settlement proceeds; the debtor did not want the Chapter 7 trustee to seize the last of her minor child's inheritance for the benefit of the debtor's creditors.

Additionally, the Court draws an adverse inference of fraudulent intent against the debtor based on her repeated invocations of her Fifth Amendment privilege against self-incrimination.  As the U.S. Bankruptcy Court for the Eastern District of Michigan explained in *General Motors Co. v. Heraud* (*In re Heraud*):

> The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  However, asserting the Fifth Amendment privilege may have adverse consequences on an individual.  The trier of fact in a civil case may draw adverse [inferences] from the invocation of the privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) ("Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]").

410 B.R. 569, 575 (Bankr. E.D. Mich. 2009).  At the debtor's deposition in this adversary proceeding, the U.S. Trustee inquired about the debtor's correspondence from February 10, 2013, the debtor's testimony at the meeting of creditors, and the facts surrounding whether the debtor used $7,000 to repay debts to her mother and neighbor.  The debtor responded by repeatedly invoking her Fifth Amendment

14

privilege against self-incrimination.  The debtor's repeated refusals to testify in response to probative evidence against her support an adverse inference of fraudulent intent against the debtor.

Based on all the aforementioned facts and circumstances in this case, there is no genuine dispute that the debtor had fraudulent intent when she made a false statement about repaying debts to her mother and neighbor.  Accordingly, there is no genuine dispute as to any material fact.

While the Court certainly sympathizes with the debtor for the unfortunate situation that she found herself in after an attorney apparently mismanaged her father-in-law's estate, the Court cannot condone the false statements that the debtor made to the Chapter 7 trustee.  The U.S. Trustee is entitled to judgment as a matter of law that the debtor's discharge should be revoked for making a false oath or account.  11 U.S.C. § 727(a)(4)(A), (d)(1), and (e)(1).

Having decided that the debtor's discharge should be revoked for making a false oath or account, the Court declines to address the U.S. Trustee's additional allegations of separate false oaths and fraudulent concealment.

## CONCLUSION

For the reasons stated above, the Court grants summary judgment in favor of the U.S. Trustee and against the debtor Linda M. Crespo.  Debtor Linda M.

Crespo's Chapter 7 discharge is hereby revoked pursuant to 11 U.S.C. § 727(d)(1) and (a)(4)(A).

IT IS SO ORDERED.